IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD L. JOHNSON (M28038), <br><br> Petitioner, <br><br> v. <br><br> DARREN D. GALLOWAY, Warden, <br> Shawnee Correctional Center <br><br> Respondent. | Case No. 24 C 5950 <br><br> Honorable Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Petitioner Edward Johnson is serving a seventeen-year prison term after being convicted of gun-related crimes. Petitioner is currently in the custody of Respondent Darren Galloway, the warden of Shawnee Correctional Center. Presently before the Court is an amended petition for writ of habeas corpus pursuant to Title 28, United States Code, Section 2254 [13] and Respondent's motion to dismiss the amended petition [20] with prejudice as untimely. For the reasons stated below, the Court denies the petition, declines to issue a certificate of appealability, and grants the motion to dismiss [20].

### Background[1]

On October 30, 2015, a police officer pulled Petitioner over for speeding. *See Johnson I*, 2018 IL App (2d) 160674 at ¶ 3. When the officer approached, Petitioner had to open the door of the car because his window was broken. *Id*. The officer smelled burnt cannabis coming from the car and, after asking the Petitioner for identification, insurance, and concealed-carry-license, called for backup. *Id*. The officer searched the Petitioner's body and found nothing, but upon searching the vehicle, the officer discovered ten rounds of ammunition and a handgun. *Id*. at ¶ 4. Petitioner ran, but the officers pursued on foot and ultimately arrested Petitioner. *Id*.

i.  **Trial Proceedings**

On November 18, 2015, the State charged Petitioner with one count of being an armed habitual criminal, four counts of unlawful possession of a weapon by a felon, and four counts of aggravated unlawful use of a weapon. *Id*. at ¶ 5. The charge of armed habitual criminal applies to individuals who receive, sell, possess, or transfer a firearm after having been convicted of two or more serious crimes, such as offenses involving weapons, drugs, or violence. *See* 720 ILCS 5/24-1.7 (2013). Before trial, the State dropped two counts of unlawful possession of a weapon by a felon and all four counts of aggravated unlawful use of a weapon. *Johnson I*, 2018 IL App (2d) 160674 at ¶ 5.

---

[1] In reviewing a petition for federal habeas corpus, the Court must presume that the state court's factual determinations are correct unless Petitioner rebuts those facts by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Weaver v. Nicholson*, 892 F.3d 878, 881 (7th Cir. 2018). Petitioner does not challenge any of the underlying facts in his Petition. The Court therefore adopts the recitation of the facts set forth in the Illinois Appellate Court's order denying Petitioner's direct appeal of his conviction, *People v. Johnson*, 2018 IL App (2d) 160674 (Ill. App. Ct. Aug. 28, 2018) (*Johnson I*), and the Illinois Appellate Court's order denying Petitioner's postconviction appeal, *People v. Johnson*, 2022 IL App (2d) 200292-U (Ill. App. Ct. Feb. 17, 2022) (*Johnson II*). The facts regarding the procedural history of this case come from the Petition and the state court record that Respondent provided pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.

By way of background, a defendant has a duty to appear at the time and place designated for trial. *See People v. Smith*, 721 N.E.2d 553, 559 (Ill. 1999). When a defendant is previously informed of the time and date of trial and admonished that a failure to appear could result in a trial in their absence but still fails to appear, "a very strong inference is raised that the defendant has elected not to appear." *People v. Broyld*, 497 N.E.2d 147, 151 (Ill. App. Ct. 4th Dist. 1986). It is within the trial court's discretion to decide whether to proceed in the defendant's absence, as a "trial judge[] [has] authority to control his docket." *People v. Flores*, 470 N.E.2d 307, 311 (Ill. 1984).

At Petitioner's arraignment on November 25, 2015, the court informed him that if he did not appear for trial, he could be tried and sentenced in his absence. *Johnson I*, 2018 IL App (2d) 160674 at ¶ 5. On March 21, 2016, Petitioner requested a conference per Illinois Supreme Court Rule 402 (eff. July 1, 2012) and rejected the State's plea bargain offer, requesting a jury trial instead. *Johnson I*, 2018 IL App (2d) 160674 at ¶ 6. The state court set a tentative trial date for March 28, 2016, and again informed Petitioner that if he did not appear, he could be tried and sentenced in his absence. *Id*. The following week, Petitioner appeared for trial but requested a continuance to May 9, 2016, which was granted. *Id*. On May 9, 2016, Petitioner did not appear for trial and defense counsel moved for a continuance. *Id*. The State was silent on the matter. *Id*. The trial court paused the case briefly while defense counsel unsuccessfully tried to locate the Petitioner. *See Johnson II*, 2022 IL App (2d) 200292-U at ¶ 6. The court denied the request for continuance and instructed both parties to proceed with motions *in limine* and jury selection. *Johnson I*, 2018 IL App (2d) 160674 at ¶ 6.

The next day, Petitioner again did not appear for trial. *Johnson II*, 2022 IL App (2d) 200292-U at ¶ 9. Counsel suggested that Petitioner was in Milwaukee, where his daughter had

3

reportedly been involved in a serious car accident. *Id*. The court declined to grant a continuance based on defense counsel's "third hand information" and proceeded with the trial *in absentia*. *Id*. The jury found Petitioner guilty of being an armed habitual criminal and of unlawful possession of a weapon by a felon. *Id*. On July 7, 2016, with Petitioner still absent, the court sentenced him to 17 years in prison. *Id*. at ¶ 10.

### ii. Direct Appeal

On direct appeal, Petitioner first argued that the trial court failed to comply with the statutory requirements for a trial *in absentia*. *See Johnson I*, 2018 IL App (2d) 160674 at ¶ 9. He asserted that the trial court erred in conducting his trial *in absentia* because the State neither: (1) explicitly moved for a trial *in absentia*, nor (2) affirmatively presented evidence that Petitioner's absence was willful. *Id*. Second, Petitioner argued the trial court erred in assessing the $354 fine to support the drug court. *Id*.

On Petitioner's first contention, the Illinois Appellate Court held that the State's silence constituted an acquiescence and request for a trial *in absentia*. *Id*. at ¶ 15. To establish a *prima facie* case of willful absence, the State is only required to show that the Petitioner: (1) was advised of the trial date; (2) was advised that the failure to appear could result in being tried *in absentia*; and (3) did not appear for trial. *Id*. at ¶ 12; *see also Smith*, 721 N.E.2d at 558. Section 115-4.1 of the Code of Criminal Procedure of 1963, the relevant statute, provides that when a defendant fails to appear for trial, "at the request of the State and after the State has affirmatively proven through substantial evidence that the defendant is willfully avoiding trial," the court may proceed with a trial *in absentia*. *See* 725 ILCS 5/115-4.1 (2014). The statute does not require a formal motion or a hearing. *See People v. Stanley*, 452 N.E.2d 105, 107 (Ill. App. Ct. 4th Dist. 1983).

4

On Petitioner's appeal that the State did not prove the Petitioner was willfully avoiding trial, citing *Smith*, the court held that this argument was without merit because "the evidence established a *prima facie* case of willful absence." *See Johnson I*, 2018 IL App (2d) 160674 at ¶ 16. Without the *prima facie* standard, "the State may confront a 'logical dilemma' in having to prove a negative to establish that a defendant is willfully absent from his or her trial." *Smith*, 721 N.E.2d at 559. The Illinois Supreme Court in *Smith* declined to impose such a duty on the trial court and/or the State. *Id*. In Petitioner's case, the appellate court found that he was advised of his trial date after the Rule 402 conference, admonished at his arraignment and after the conference that if he did not appear for trial he could be tried *in absentia*. *See Johnson I*, 2018 IL App (2d) 160674 at ¶ 16. When the defendant failed to appear, defense counsel moved for a continuance, and the State was silent. *Id.* at ¶ 15. The appellate court held that the trial court did not err in interpreting the State's silence as acquiescence for a trial *in absentia*. *Id*.

On Petitioner's second contention, the Illinois Appellate Court vacated the $354 fine, as the State confessed error on this point. *Id*. at ¶ 18. Thus, as the court affirmed the judgment of the trial court and vacated the fine (*id*. at ¶ 20), Petitioner subsequently filed a petition for leave to appeal to the Illinois Supreme Court, which was denied on March 20, 2019. *See* [24-7] at 2.

A conviction becomes final on direct appeal when either the United States Supreme Court affirms the conviction, denies a petition for a writ of certiorari, or the time for filing a certiorari petition expires. *Clay v. United States*, 537 U.S. 522, 527 (2003). A petitioner has a 90-day period within which they can file a petition for a writ of certiorari to the United States Supreme Court following direct appeal. *See Anderson v. Litscher*, 281 F.3d 672, 674–75 (7th Cir. 2002). Petitioner did not bring a petition for a writ of certiorari on direct appeal. As such, Petitioner's judgment of conviction became final on June 18, 2019, when his 90-day period expired following the Illinois

5

Supreme Court's denial of his petition for leave to appeal on March 20, 2019. *See Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009).

### iii. Postconviction Proceedings

Having exhausted his rights on direct appeal, on February 21, 2020, Petitioner filed a *pro se* postconviction petition. *See* [20-5]. Petitioner's primary claim was, again, that the trial court erred in conducting the jury trial *in absentia*. *See Johnson II*, 2022 IL App (2d) 200292-U at ¶ 13. He argued that the State is required to provide certified-mail notice before a defendant can be tried *in absentia* if the defendant was absent when the court set a trial date. *Id*. He asserted that the trial resuming on May 10, 2016, constituted a new trial date and the State failed to provide him notice. *Id*. Petitioner also argued that both his trial and appellate counsel were ineffective for failing to object to the trial court's error in deciding to proceed with a trial *in absentia*. *Id*. at ¶ 15.

On April 2, 2020, the circuit court held that the claims raised were frivolous and patently without merit. *See* [20-6] at 6. That court held that Petitioner's claim regarding trial court error was identical to the issue raised on direct appeal, and as the appellate court already decided this matter, it was barred by the doctrine of *res judicata*. *See* [20-6] at 5–6 (*citing People v. Rissley*, 795 N.E.2d 174, 179 (Ill. 2003)). Further, the court held that Petitioner's contention of ineffective trial and appellate counsel is refuted by the record, as Petitioner's attorney objected to proceeding to trial without him present by requesting continuances. *See* [20-6] at 4; *Johnson I*, 2018 IL App (2d) 160674 at ¶¶ 6–7. On appeal, Petitioner's attorney raised this issue as the primary argument on his behalf—that the trial *in absentia* was improper because the State did not explicitly move for a trial *in absentia* nor did they prove that Petitioner was willfully avoiding trial. *See Johnson I*, 2018 IL App (2d) 160674 at ¶¶ 15–16. This argument failed and the circuit court dismissed the postconviction petition. *See* [20-6] at 6.

6

The appellate court affirmed the post-conviction decision, finding that the argument was both forfeited and meritless. See *Johnson II*, 2022 IL App (2d) 200292-U at ¶ 1. Petitioner had raised, for the first time on appeal from the dismissal of his postconviction petition, the claim that defense counsel was ineffective for failing to request a hearing to prove that his absence from trial was not willful. *Id*. at ¶ 15. A post-conviction petitioner cannot raise for the first time on appeal an issue not raised in his petition. See *People v. Jones*, 821 N.E.2d 1093, 1097 (Ill. 2004). Since Petitioner did not raise this issue in his post-conviction petition, he forfeited this argument. *Johnson II*, 2022 IL App (2d) 200292-U at ¶ 20. Further, the court held there was no reasonable probability that the trial court would have found that Petitioner's absence was not willful. *See id*. at ¶ 21. On the issue of certified-mail notice, the appellate court had held on direct appeal that the trial court complied with the procedures for a trial *in absentia*, and that "the certified-mailing procedure is not at issue." *Johnson I*, 2018 IL App (2d) 160674 at ¶ 17. Thus, the court rejected the argument that May 10, 2016, was a new trial date of which the State owed Petitioner notice. *Johnson II*, 2022 IL App (2d) 200292-U at ¶ 23. The Illinois Supreme Court denied Petitioner's ensuing petition for leave to appeal on January 25, 2023. *See* [24-13].

After the Petitioner exhausted all his available state court remedies, he filed his initial Section 2254 petition for writ of habeas corpus on January 24, 2024, raising claims that challenged Petitioner's trial *in absentia*. *See* [1]. Specifically, Petitioner raised five claims before this Court: (1) that the state trial court erred in trying him *in absentia*; (2) that the state appellate court erred in holding that the trial *in absentia* commenced on May 9, 2016; (3) that Petitioner received ineffective assistance of counsel from his trial and appellate counsel; (4) that the Illinois statute governing trials *in absentia* was ambiguous about what constitutes a "new" trial date; and (5) that the state courts incorrectly relied on authority that was factually distinguishable. *Id*.

7

This Court later entered an order [17] allowing Petitioner leave to file an amended petition, which Petitioner filed on August 13, 2024. *See* [13]. In his amended writ of habeas corpus, Petitioner brings the same five claims in his initial petition, along with two additional claims: that the state appellate court erred in misrepresenting his argument and that the Illinois armed habitual criminal statute is unconstitutional. *Id*.

## Discussion

In seeking federal habeas relief, petitions challenging state court convictions are subject to the framework of the Antiterrorism and Effective Death Penalty Act (AEDPA), the statute that governs the scope of such review in federal court. The AEDPA authorizes relief under 28 U.S.C. § 2254 only when the state court's decision on the merits of the petitioner's claim is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). In the Seventh Circuit, a "state court decision is 'contrary to' Supreme Court precedent if it either did not apply the proper legal rule or if the decision applied the correct rule but reached the opposite result from the Supreme Court on materially indistinguishable facts." *Meyers v. Gomez*, 50 F.4th 628, 641 (7th Cir. 2022). A state court decision is "an unreasonable application of Supreme Court precedent when it applies that precedent in a manner that is 'objectively reasonable, not merely wrong.'" *Id.* (*quoting Woods v. Donald*, 575 U.S. 312, 316 (2015)). "AEDPA's standard is intentionally 'difficult to meet.'" *Woods*, 575 U.S. at 316 (*quoting White v. Woodall*, 572 U.S. 415, 419 (2014)). Further, as noted above, factual determinations of a state court are presumed reasonable unless a petitioner can show otherwise by clear and convincing evidence. *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004).

However, for a petitioner to even raise a claim of error in habeas, state remedies must be exhausted. *Id*. at 648. "In order to preserve a federal claim for review in a habeas proceeding, a

8

petitioner must first present it to the state courts through one full round of review, alerting those courts as to the federal nature of the claim when he does so." *Meyers*, 50 F.4th at 646. If a petitioner fails to bring the claims in state court and the opportunity to do so has lapsed, then he has procedurally defaulted on his claims. *Lieberman v. Thomas*, 505 F.3d 665, 669 (7th Cir. 2007).

After exhausting all state remedies, Petitioner filed his initial petition for federal habeas relief on January 24, 2024, asserting five grounds for relief. *See* [1]. Respondent filed a motion requesting the Court dismiss the claims with prejudice as untimely. *See* [16]. Petitioner then filed an amended petition on August 13, 2024, asserting the same five grounds along with two additional claims challenging the state appellate court decision and the constitutionality of the state's armed habitual criminal statute. *See* [13]. Respondent, again, filed a motion to dismiss with prejudice, asserting the same argument that the Petitioner's claims in the amended petition are untimely. *See* [20]. Petitioner responded in opposition to the motion to dismiss and argued that the issue of timeliness should be set aside and equitably tolled because Petitioner faced extraordinary circumstances. *See* [25]. In Respondent's reply, the government argued that Petitioner is not entitled to equitable tolling because he failed to show his circumstances were extraordinary or that he diligently pursued his rights. *See* [29]. Petitioner filed a sur-reply, alleging that Respondent mischaracterized Petitioner's circumstances and misapplied legal standards in evaluating whether equitable tolling was warranted. *See* [32].

### Statute of Limitations

Before a federal court may consider the merits of a habeas petition, it must first determine whether the petition was timely filed, as the AEDPA establishes a one-year deadline within which state prisoners must file their federal habeas petitions. *See* 28 U.S.C. § 2244(d). Section 2244(d) provides that the limitations period for seeking review under the AEDPA begins on the latest date

9

of: (A) the date on which the judgment of conviction became final; (B) the removal of a state-created unconstitutional impediment preventing the applicant from filing the petition; (C) the date on which a right asserted was initially recognized by the Supreme Court if the right is retroactive on collateral review; or (D) the date of uncovering previously undiscoverable evidence upon which the habeas claim is predicated. *See* 28 U.S.C. § 2244(d)(1)(A)-(D). The limitations period is tolled while a petitioner's properly filed application for collateral relief is pending in state courts. *See* 28 U.S.C. § 2244(d)(2).

### i. Petitioner's Claims Challenging the Trial *in Absentia* are Untimely

The government argues that Petitioner's claims alleging that: (1) the state trial court erred in trying him *in absentia*; (2) the state appellate court misrepresented his argument and erred in holding the trial began on May 9, 2016; (3) he received ineffective trial and appellate counsel; and (4) the state courts incorrectly relied on factually distinguishable authority are untimely. *See* [16]; [20]. As § 2244(d)(1)(A) mandates, the date that starts the one-year limitations clock occurs when either the petitioner completes the appeal process through to the Supreme Court of the United States or the time for filing a certiorari petition expires without any further action by the petitioner. *See Clay*, 537 U.S. at 527 (2003). A petitioner has 90 days to bring a petition for a writ of certiorari before the Supreme Court of the United States after direct appeal has concluded and there is a final judgment from the highest state court. *See* 28 U.S.C. § 2101(c); *Caspari v. Bohlen*, 510 U.S. 383, 390 (1994).

According to the government, subject to the statute of limitations, Petitioner filed his habeas petition months too late. In Illinois, a habeas petitioner has two opportunities to appeal their conviction in state court—direct appeal and postconviction. The statute of limitations clock for direct appeal begins when the 90-day period to file a certiorari petition to the Supreme Court

of the United States expires. *See Jimenez*, 555 U.S. at 119 (holding that the limitations period under § 2244(d)(1)(A) begins to run upon the expiration of the 90-day period for seeking review in the Supreme Court). In Petitioner's case, the Illinois Supreme Court denied his petition for leave to appeal his conviction on March 20, 2019. *See* [24-7] at 2. He did not file a petition for a writ of certiorari to the United States Supreme Court. Thus, under 28 U.S.C. § 2244(d)(1)(A), Petitioner's one-year limitations period began after the 90-day writ of certiorari period, on June 18, 2019.

When a petitioner files a postconviction petition seeking a review of the direct appeal, the one-year statute of limitations clock tolls. *See* 28 U.S.C. § 2244(d)(2). This serves the purpose of pausing the one-year clock while the petitioner is actively pursuing state court remedies, but the clock resumes when the state court completes postconviction review and issues its mandate. *See Lawrence v. Florida*, 549 U.S. 327, 332 (2007). On February 21, 2020, Petitioner filed a petition for postconviction relief in state court, thereby tolling the statute of limitations. *See* [20-5]. As a result, 247 days ran against the one-year limitations period between the trigger date of June 18, 2019, and the filing of the postconviction petition on February 21, 2020. As the record reflects, the state trial court dismissed the postconviction petition, and the Illinois Appellate Court affirmed. *See Johnson II*, 2022 IL App (2d) 200292-U. Here again, Petitioner sought leave to appeal to the Illinois Supreme Court, which was denied on January 25, 2023. *See* [24-13].

When, as in this case, a petitioner does not bring a petition for a writ of certiorari from their postconviction petition and postconviction proceedings conclude, the limitations clock resumes running upon the Illinois Supreme Court's disposition of the case. *See Gutierrez v. Schomig*, 233 F.3d 490, 491–92 (7th Cir. 2000) (holding that the statute of limitations is not tolled for the 90-day period during which certiorari could have been sought after the denial of state postconviction

11

relief); *Gildon v. Bowen*, 384 F.3d 883, 885–86 (7th Cir. 2004). [2] Section 2244(d)(2) does not toll the one-year limitations period during the pendency of a petition for certiorari. *See Lawrence*, 549 U.S. at 332. Thus, the statute of limitations remained tolled only through January 25, 2023, on which date Petitioner's limitations clock then began to tick again. With 118 days left in the one-year period, Petitioner's statute of limitations expired on May 23, 2023. Petitioner did not file his initial habeas petition until eight months later, on January 24, 2024. *See* [1]. Accordingly, Petitioner's claims challenging his trial *in absentia* are untimely because more than a year of untolled time elapsed between the date on which his conviction became final upon the conclusion of direct review and the filing of his federal habeas petition.

### ii. Petitioner's Constitutional Challenge is Untimely

The government further argues that Petitioner's remaining claim challenging the constitutionality of the state's armed habitual criminal statute, the Illinois SAFE-T Act, raised for the first time in his amended petition, is also untimely. Petitioner alleges that the armed habitual criminal statute, under which he was sentenced, is unconstitutional because, unlike the 2021 statute governing sentencing for individuals deemed habitual criminals based on prior convictions, it does not require that the first eligible predicate offense occur at the age of 21 or older and allows a broader range of felonies to serve as prior offenses. *See* [13] at 6; *compare* 720 ILCS 5/24-1.7 *with* 730 ILCS 5/5-4.5-95(a) (eff. July 1, 2021).

Constitutional claims raised on the ground that a petitioner's due process rights were infringed upon, such as the challenge that Petitioner asserts, are also subject to the AEDPA one-year statute of limitations. *See Villanueva v. Anglin*, 719 F.3d 769, 773–74 (7th Cir. 2013) (applying

---

[2] Even if the limitations clock had tolled for a 90-day period to allow Petitioner the opportunity to file a petition for a writ of certiorari after the denial of his postconviction petition on January 25, 2023, the clock would have resumed on April 25, 2023, and ran for the remaining 118 days until expiring on August 21, 2023. Thus, Petitioner would still have been five months too late when he filed his habeas petition on January 24, 2024. *See* [1].

12

the one-year statute of limitations to a habeas petition alleging a constitutional claim about an Illinois law that imposed mandatory supervised release). As detailed above, Petitioner's conviction became final on June 18, 2019, and his statute of limitations for filing a federal habeas petition expired on May 23, 2023. Section 2244(d)(1)(D) gives habeas petitioners the benefit of a later start on their limitations clock if vital facts could not have been known by the date the appellate process concluded. *See Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000). In his amended habeas petition, Petitioner contends that he did not raise this constitutional claim earlier because it was unavailable while his postconviction appeal was pending. *See* [13] at 6.

However, the factual predicate for this claim could have been discovered through due diligence at the time the amendment went into effect on July 1, 2021. At that time, Petitioner's limitations clock was tolled because of his pending postconviction petition in state court, which had been filed on February 21, 2020. *See* [20-5]. The Illinois Supreme Court denied Petitioner's postconviction petition for leave to appeal on January 25, 2023, thereby ending his postconviction denial appeal on that date. *See* [24-13]. Even assuming that Petitioner's constitutional claim is entitled to a later start for calculating the one-year deadline under subsection (D), the claim is still untimely. Following the denial of Petitioner's postconviction petition for leave to appeal on January 25, 2023, the limitations clock ran for one year until it expired on January 25, 2024. *See Duncan v. Walker*, 533 U.S. 167, 172 (2001) (holding that properly filed federal habeas petitions do not toll the limitations period). This claim is untimely because it was not raised until Petitioner's amended petition, which was not filed until August 13, 2024. Since the statute of limitations for this claim expired on January 25, 2024, and Petitioner did not file this claim until he filed his amended habeas petition on August 13, 2024, he was seven months too late. *See* [13].

13

Further, the timeliness of this constitutional claim depends on the timeliness of the amended petition, rather than the initial petition, because this claim does not relate back to the original petition. Claims in an amended petition, filed after the statute of limitations expired, relate back to the date of the original pleading if the amended pleading "arose out of the conduct, transaction, or occurrence" asserted in the original pleading. *See* Fed. R. Civ. P. 15(c). In *Beason v. Marske*, the petitioner raised a claim in his amended petition for habeas corpus about his prior drug offenses that differed from the claim he presented in his initial petition regarding an armed robbery conviction. 926 F.3d 932, 938 (7th Cir. 2019). The Seventh Circuit held that the later-asserted claim did not relate back to the first claim because it concerned an altogether different qualifying offense that was separate in both "time and type" from the originally raised events and lacked a unifying "common core of operative facts." *Id*. (*quoting Mayle v. Felix*, 545 U.S. 644, 650 (2005)). Petitioner's original petition did not raise claims regarding his sentence or the armed habitual criminal statute and 2021 amendment—it only alleged challenges to his trial *in absentia*. *See* [1]. As such, Petitioner's claim challenging the constitutionality of the state statute does not relate back because it is a "new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650.

### iii. Equitable Tolling is Inapplicable in Petitioner's Case

Even so, for habeas petitions filed outside the limitations period, courts may still consider its merits if equitable tolling applies. This serves as an affirmative defense for petitioners to argue the delay should be excused. The doctrine of equitable tolling permits a federal habeas petitioner to overcome a breach of the AEDPA's one-year statute of limitations period "in appropriate cases." *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling allows a court to pause or extend a statute of limitations deadline for filing a lawsuit where the litigant pursued their rights diligently

but extraordinary circumstances prevented them from making a timely filing. *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014). Petitioner seeks to equitably toll the statute of limitations, but he does not qualify.

To obtain equitable tolling, a petitioner has to demonstrate that: (1) they were diligently pursuing their rights, and (2) that some extraordinary circumstance stood in their way and prevented them from making a timely filing. *Holland*, 560 U.S. at 649. The petitioner bears the burden of proving both elements are met. *Williams v. Buss*, 538 F.3d 683, 685 (7th Cir. 2008). The "diligence required for equitable tolling purposes is reasonable diligence . . . not maximum feasible diligence[.]" *Holland*, 560 U.S. at 653 (cleaned up). But "mere conclusory allegations of diligence are insufficient and reasonable effort throughout the limitations period is required." *Mayberry v. Dittmann*, 904 F.3d 525, 531 (7th Cir. 2018) (*citing Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016)). An extraordinary circumstance is something "beyond the applicant's control, that prevents timely filing; simple legal errors, such as ignorance of the federal deadline, do not suffice." *Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020). Common parts of prison life, taken alone, are also not considered extraordinary. *See Carpenter*, 840 F.3d at 872.

The court takes a holistic view of the petitioner's set of circumstances, "considering 'the entire hand that the petitioner was dealt' rather than taking each fact in isolation." *Gray v. Zatecky*, 865 F.3d 909, 912 (7th Cir. 2017) (*citing Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014)). Equitable tolling has a high bar and "is rarely granted." *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008).

In his response brief, Petitioner concedes his initial petition was untimely because he did not file by the May 23, 2023 deadline, but he contends that his circumstances were extraordinary. *See* [25] at 1–2. He argues his delay was due to factors beyond his control: an assault by another

15

inmate on May 1, 2023, which left him unconscious, concussed, and placed in the Segregated Housing Unit. *Id.* As a result of his time in segregated housing, Petitioner's personal effects, including critical case-related legal materials, were mishandled and discarded by janitors. *Id*. at 2. The legal documents were critical to the preparation of his habeas petition, as they included his research and rough drafts of his initial petition. *Id*. As a result, Petitioner had to rebuild all of his case materials and research, which was made exceptionally difficult by his incarceration and required several months to make whole. *Id*. Petitioner claims that the effects of the assault, coupled with the loss of his case materials, constitute extraordinary circumstances that made it impossible for him to file his initial petition by the statute of limitations deadline. *Id*. According to Petitioner, these events—which occurred near the end of the filing period—were unforeseeable and outside of his control, the combined impact of which rendered him unable to timely file his habeas petition. *Id.*

While the Court is sympathetic to the plight of incarcerated individuals, Petitioner's situation does not arise to extraordinary circumstances that justify equitable tolling. Petitioner bears the burden of establishing that the circumstances that caused the delay are both extraordinary and beyond his control. *Mayberry*, 904 F.3d at 530. In *Moreland v. Eplett*, the petitioner similarly argued that lack of access to prison library resources and being placed in administrative segregation and subsequently missing legal materials for two weeks while in segregation constituted an extraordinary circumstance. 18 F.4th 261, 272 (7th Cir. 2021). The Seventh Circuit held that in an equitable determination, "administrative segregation may serve as a piece of the puzzle, but alone is not enough." *Id*. (cleaned up). The appellate court further held that most, if not all, of the petitioner's claims were relatively common prison experiences that only accounted for a small percentage of the limitations period, and without further proof, "it is difficult to conclude that

16

[petitioner] suffered more than a few weeks delay[.]" *Id*. Additionally, the Seventh Circuit held in *Carpenter* that a petitioner alleging that he suffered from blood clots and other health issues did not establish extraordinary circumstances because he failed to explain how such conditions were severe enough to prevent timely filing. 840 F.3d at 872–73.

As in *Carpenter*, Petitioner failed to meet his burden of demonstrating that his physical health issues, namely the concussion, "actually impaired his ability to pursue his claims." *See id*. Petitioner alleges that he was assaulted about a month before the limitations period expired, and that he lost his legal materials when he was moved into segregated housing, but he does not explain how those issues kept him from filing his habeas petition during the AEDPA limitations period or for eight months after it. The three days that Petitioner spent in segregated housing, from May 1, 2023 to May 4, 2023, was not close to the two-week segregation period in *Moreland*. *See* [29-1]. As the Seventh Circuit in *Moreland* did not view placement in segregated housing for two weeks as extraordinary, the three days that Petitioner was in segregated housing clearly does not qualify. Additionally, Petitioner's claims are relatively common prison experiences—segregation, lack of resources, physical altercations with inmates—and similar to *Moreland*, only accounted for a few weeks of delay in the entirety of the one-year limitations period. This is not enough to establish extraordinary circumstances under binding Seventh Circuit precedent.

Petitioner also claims that he acted with reasonable diligence. *See* [25] at 2. "Reasonable diligence requires that [petitioner] prove he diligently tried to protect his rights over time, not just at some points near the end of the limitations period." *Moreland*, 18 F.4th at 271. He asserts that despite the challenges caused by the physical assault and loss of legal materials, he acted diligently in pursuing his rights by immediately beginning to reconstruct his case materials and conducting research. *See* [25] at 2. To this effect, Petitioner wrote an affidavit attesting to these events and

17

stated his efforts in rebuilding his case materials and requesting the records of the assault from the prison as evidence of his diligence. *See* [25-1] at ¶¶ 9–12. Petitioner further claims that the limited resources available to incarcerated individuals hindered the expediency of this process and required taking several months to complete. *See* [25] at 2. Petitioner argues the filing date of January 24, 2024, was his most sincere effort in completing his initial petition. *See* [25-1] at ¶ 10.

The Supreme Court in *Holland* held that a habeas petitioner had exercised reasonable diligence by writing "numerous letters seeking crucial information and providing direction" to his attorney, "repeatedly contact[ing] the state courts, their clerks, and the Florida State Bar association[,]" as well as preparing "his own habeas petition *pro se* and promptly fil[ing] it with the District Court" on the day he discovered his limitations period had expired. 560 U.S. at 653. Here, unlike the petitioner in *Holland*, it is not evident that Petitioner exerted nearly as much effort to pursue his rights, neither through constant communication with his attorney, the court, nor through filing his petition on the day, or even soon after, the deadline expired—Petitioner filed eight months later. Instead, Petitioner presented almost no evidence of what he was doing to preserve his rights as the clock ran. The assault on Petitioner allegedly occurred on May 1, 2023, about a month before the May 23, 2023 deadline, but it is not clear what Petitioner was doing to pursue his rights for the five months prior. *See* [25]. Nor if any action was taken between the direct and postconviction appeal. *See id.*; [32]. Petitioner had to demonstrate that he was reasonably diligent in pursuing his rights throughout the entirety of the limitations period and until he finally filed his untimely habeas petition on January 24, 2024. The evidence is not sufficient to prove Petitioner exercised reasonable diligence in pursuit of his rights.

      **iv.**      **Denial of Certificate of Appealability**

As a final matter, pursuant to Rule 11 of the Rules Governing § 2254 Cases, the Court must either issue or deny a certificate of appealability. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (cleaned up). As explained above, Petitioner's claims are time-barred. Nothing before the Court suggests that reasonable jurists would debate the outcome of the petition or find a reason to encourage Petitioner to proceed further. Accordingly, the Court declines to issue him a certificate of appealability.

## Conclusion

For these reasons, Petitioner's amended writ of habeas corpus pursuant to 28 U.S.C. § 2254 [13] is denied and Respondent's motion to dismiss [20] is granted. Judgment shall enter in favor of Respondent and against Petitioner. Civil case terminated.

**SO ORDERED.**

Dated: August 11, 2025

                                                    Sunil R. Harjani
                                                    United States District Judge